## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**HANDEL C.,[1]**

        **Plaintiff,**                       **Case No. 2:23-cv-1211**
                                               **Magistrate Judge Norah McCann King**

    **v.**

**LELAND DUDEK,[2]**
**Acting Commissioner of Social Security,**

        **Defendant.**

## <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Handel C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On January 14, 2020, Plaintiff protectively filed his application for benefits, alleging that he has been disabled since that date. R. 104–05, 238–41. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 116–21, 145–49. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 152–53. ALJ Dina Loewy held a hearing on March 8, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42–81. In a decision dated August 31, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 14, 2020, Plaintiff's alleged disability onset date, through the date of that decision. R. 10–28. That decision became final when the Appeals Council declined review on January 5, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 19, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On May 2, 2024, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 50 years old on January 14, 2020, his alleged disability onset date. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"); depressive disorder; generalized anxiety disorder; obesity; hearing loss; degenerative disc disease; and osteoarthritis. *Id*. The ALJ also found that Plaintiff's hypertension; gastritis; tinnitus; hyperlipidemia; and a ¼ inch shorter leg length were not severe impairments. R. 13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–16.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 16–26. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a photocopy machine operator. R. 26–27.

Alternatively and relying on the testimony of the vocational expert, the ALJ found at step five that a significant number of jobs−*e.g.*, jobs as a marker, a routing clerk, and a mail clerk− existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 27–28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 14, 2020, his alleged disability onset date, through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be

reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 12. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 11.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Ashraf Faltas, M.D.

On July 28, 2020, Ashraf Faltas, M.D.,[4] conducted a consultative examination on behalf of the state agency in connection with Plaintiff's complaints of constant neck and back pain. R. 484–85. Dr. Faltas noted, on physical examination, that Plaintiff's extremities had no cyanosis, no clubbing and no edema and that Plaintiff had full musculoskeletal range of motion. R. 485. Dr. Faltas further found as follows:

> NEUROLOGICAL: Right leg raise test at 70 degrees produced back pain. Left leg raise test at 80 degrees without any problems. DTR +2. No sensory deficit. No motor deficit. Power 5/5 in all extremities. The patient had a slightly limping gait. He was able to walk in his heels and toes but not quite able to touch his toes. The claimant was able to get on and off the examination table without any assistance and without the use of any devices.

*Id*. An x-ray of the lumbosacral spine that showed early degenerative changes and an x-ray of the cervical spine revealed "prominent degenerative changes, marked narrowing of C6-7 disc space. Marked straightening of lordotic curvature. Focal calcification overlying left carotid artery." *Id*.; *see also* R. 481 (copy of x-ray of cervical spine), 482 (copy of x-ray of lumbar spine).

---

[4] The ALJ mistakenly refers to this physician as "Dr. Faltas Ashraf." R. 20.

**B.      Edward Boylan, M.D.**

On March 23, 2021, Edward Boylan, M.D., Plaintiff's treating primary care physician with a specialty in internal medicine, completed a five-page, check-the-box, and fill-in-the-blank form entitled "Multiple Impairment Questionnaire." R. 575–79, 586–90 (duplicate). Dr. Boylan noted that he had most recently examined Plaintiff on May 16, 2021, and sees him quarterly/every three months. R. 575, 586. Dr. Boylan diagnosed PTSD and cervical radiculopathy with herniated nucleus pulposus. *Id*. Asked what clinical and laboratory findings support his diagnoses, Dr. Boylan responded, "See attached[.]"[5] *Id*. Dr. Boylan expected Plaintiff's impairments to last at least 12 months. *Id*. Dr. Boylan identified Plaintiff's primary symptoms as chest pain, shortness of breath, night terrors, and daily sharp, radiating pain in the neck and left arm precipitated and/or aggravated by moving, lifting, and bending. R. 576, 587. Plaintiff's course of treatment was consistent with his symptoms and limitations. *Id*. Dr. Boylan opined that, in an 8-hour workday, Plaintiff could sit for less than 1 hour, could stand and/or walk for less than 1 hour, and must get up from a seated position every 1 to 2 hours. R. 577, 588. Plaintiff could occasionally (up to one-third of an 8-hour day) lift and carry up to 10 pounds. *Id*. According to Dr. Boylan, Plaintiff could occasionally use his arms and fingers to grasp, turn, and twist objects; for fine manipulations; and for reaching (including overhead). R. 578, 589. Plaintiff's symptoms would likely increase if he were placed in a competitive work environment and that, in an 8-hour workday, Plaintiff's experience of pain, fatigue, or other symptoms were severe enough to frequently (from one-third to two-thirds of an 8-hour workday) interfere with his attention and concentration. *Id*. Plaintiff would need to take unscheduled breaks at unpredictable intervals in order to rest during an 8-hour workday. *Id*. (leaving blank questions

---

[5] The particular findings to which Dr. Boylan refers are not immediately clear to the Court.

asking how often and how long such breaks must be). Dr. Boylan opined that Plaintiff had good days and bad days, but responded "NA" when asked how often, on average, Plaintiff was likely to be absent from work as a result of his impairments or treatment. R. 579, 590. Dr. Boylan further opined that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, citing Plaintiff's PTSD. *Id*. According to Dr. Boylan, Plaintiff's symptoms and related limitations applied as far back as January 1, 2020. *Id*. Dr. Boylan affirmed that Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings in the doctor's report. *Id*.

### C.    Kevin Pecca, D.C.

On May 11, 2020, Kevin Pecca, D.C., Plaintiff's treating chiropractor, opined that Plaintiff should engage in "[n]o heavy lifting[.]" R. 840.

On March 30, 2021, Chiropractor Pecca completed a seven-page, check-the-box, and fill-in-the-blank form entitled, "Spinal Impairment Questionnaire." R. 601–07 ("Dr. Pecca's 2021 opinion"). Chiropractor Pecca had treated Plaintiff on a monthly (or as needed) basis since January 4, 2020, and had most recently examined Plaintiff on March 30, 2021. R. 601. Chiropractor Pecca diagnosed cervical subluxation, cervical radiculopathy, and headaches. *Id*. Positive clinical findings that supported the diagnoses included limited range of motion at C2, C3, C4 (to the left) and tenderness at C1, C2, C3, and C4; monthly muscle spasm on the cervical spine on the left side of neck; muscle weakness at C6, C7; swelling in both ankles; crepitus at C2–C5; and trigger points at C2–C5. R. 601–02. Chiropractor Pecca described Plaintiff's primary symptoms as, *inter alia*, constant sharp pain in the neck; numbness in the back of the head, bilateral shoulder pain, and flare ups of PTSD. R. 603. Chiropractor Pecca identified Plaintiff's cervical radiculopathy and PTSD as precipitating factors to his pain. R. 603–04. He

10

denied that Plaintiff was able to completely relieve his pain without unacceptable side effects. R. 604. The chiropractor opined that, in an eight-hour workday, Plaintiff could sit for 0 to 1 hour and could stand/walk for 1 hour. *Id*. He further opined that Plaintiff must not continuously sit or stand/walk in a work setting and must get up and move around every half hour. *Id*. The chiropractor also opined that Plaintiff could occasionally lift up to 20 pounds and could occasionally carry up to 10 pounds. R. 604–05. According to Dr. Pecca, Plaintiff's experience of pain or other symptoms was severe enough to frequently interfere with his attention and concentration; that Plaintiff's impairments were ongoing and would likely last at least 12 months; and that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. R. 605. The chiropractor went on to opine that Plaintiff could not tolerate even "low stress" and that, "[d]ue to his high levels of anxiety, PTSD, depression, heart palpitations, no stress is recommended[.]" *Id*. Plaintiff would need to take an unscheduled break once every half hour for 30 to 60 minutes. *Id*. Plaintiff's condition interferes with his ability to keep his neck in a constant position (*e.g.*, looking at a computer screen, looking down at a desk). *Id.* According to the chiropractor, Plaintiff's impairments were likely to produce "good days" and "bad days" but "mostly bad[.]" *Id*. Plaintiff was likely to be absent from work more than three times per month as a result of his impairments or treatment. *Id.* Plaintiff's course of treatment was consistent with his symptoms and limitations and those symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings discussed in the report. R. 607. Dr. Pecca also identified the limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis: psychological limitations; need to avoid noise; need to avoid fumes; need to avoid gases; limited vision; need to avoid temperature extremes; need to avoid humidity; need to avoid dust; no kneeling; no bending; and no stooping. *Id.* Finally, Dr.

11

Pecca opined that Plaintiff's symptoms and related limitations apply as far back as January 1, 2020. *Id*.

## V.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Boylan's opinion, which, he argues, support a finding of disability. *Plaintiff's Brief*, ECF No. 6, pp. 22–26; *Plaintiff's Reply Brief*, ECF No. 12, p. 1. For the reasons that follow, the Court agrees that this issue requires remand.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527

---

[6] As previously noted, Plaintiff's claim was filed on January 14, 2020.

*with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In the present case, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and/or carry 20 pounds occasionally and ten pounds frequently; can stand and/or walk with normal breaks for a total for both of six hours in an eight-hour workday; can sit for six hours in an eight-hour workday with normal breaks; can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; can occasionally balance or stoop but can never kneel or crouch; must avoid concentrated exposure to hazardous machinery, unprotected heights and operational control of moving machinery; can tolerate a moderate noise level and must avoid high ambient noise; can frequently reach, handle and/or finger but cannot operate foot controls with the left lower extremity; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts and gases; can apply common sense to remember, understand and carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks; in a work environment free of fast-paced production requirements such as working on a conveyor belt; can perform simple work-related decisions, with few if any workplace changes, and can tolerate occasional interaction with the public, coworkers and/or supervisors.[7]

---

[7] The ALJ further noted in a footnote the following:

14

R. 16–17. In making this determination, the ALJ found, *inter alia*, that Dr. Boylan's opinion was unpersuasive, explaining as follows:

> Primary care provider, Dr. Boylan opined that the claimant would essentially be limited to a well-below sedentary exertional capacity, including sitting/standing/walking for less than an hour a day, needing unscheduled breaks, and only lifting five pounds occasionally. (Ex. 10F). This opinion is wholly unpersuasive as it is unsupported by Dr. Boylan's own records, which showed physical examinations within normal limits. (Exs. 8F//9, 12, 16, 22, 25, 24F). Moreover, while Dr. Boylan opined that the claimant's PTSD would also interfere with work-related functionality, his treating notes consistently documented a PHQ score of 1, showing minimal depression and no indication of the claimant appearing anxious. (Exs. 8F/2, 8, 11, 15, 18, 21, 24F/2, 5).

R. 23.

Plaintiff argues, *inter alia*, that the ALJ improperly rejected Dr. Boylan's opinion because it was, in fact, supported by his treatment records, *Plaintiff's Brief*, ECF No. 6, pp. 22–26; *Plaintiff's Reply Brief*, ECF No. 12, p. 1, and that Dr. Boylan's opinion was consistent with the opinion of Plaintiff's treating chiropractor and with the physical findings of the consultative examiner, Dr. Faltas. *Plaintiff's Brief*, ECF No. 6, pp. 22–26. However, the Acting Commissioner disagrees, arguing that the ALJ properly considered both the supportability and consistency of Dr. Boylan's opinion. *Defendant's Brief*, ECF No. 11, pp. 10–11. The Acting Commissioner contends that, *inter alia*, this opinion was inconsistent with Dr. Faltas' findings of "full range of motion in the musculoskeletal region with some pain in his right leg at 70 degrees"

---

> The undersigned initially offered a hypothetical that included the limitation of occasional kneeling and crouching. Further, although in her hypothetical posed to the vocational expert, the undersigned did not include a limitation to never crawling. However, she personally checked Occubrowse, and neither the past relevant work nor the 3 jobs cited by the vocational expert require any crawling.

R. 17 n.1.

and that while "Plaintiff slightly limped, he could walk on his heels, get on and off the examination table without assistance or an assistive device, and demonstrated normal strength power, and neurological functioning[.]" *Id*. The Acting Commissioner therefore takes the position that Plaintiff's argument boils down to a disagreement with the ALJ's decision. *Id*. at 12.

The Court concludes that this issue requires remand. As detailed above, the ALJ, in discounting Dr. Boylan's opinion, explained why that physician's own treating notes reflecting physical examinations within normal limits did not support that opinion, but the ALJ did not specifically address how or why that opinion was inconsistent with other record evidence. R. 23. It is true that an ALJ need not reiterate "the magic words 'support' and 'consistent' for each doctor" in order to satisfy the regulatory requirement that the ALJ consider the supportability and consistency factors, the ALJ must at least "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec*., 115 F.4th 637, 639–40 (3d Cir. 2024). In this case, the ALJ did not do so and the Court cannot determine whether Dr. Boylan's opinion is consistent with record evidence without engaging in the work of the ALJ. *See Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). For example, the ALJ considered Dr. Faltas' physical examination findings, which included a full range of motion in the musculoskeletal region, normal strength and power, normal neurological functioning, ability to walk on heels, and ability to get on an off the examination table without any assistance or assistive device, but which also included a positive right leg raise test with some pain at seventy degrees and a slightly limping gait. R. 21. The ALJ also noted the

x-ray of the cervical spine which showed "prominent degenerative changes with marked

narrowing of the C6/7- disc space, marked straightening of the lordotic curvature and focal

calcified plaque overlying the left carotid artery" and the x-ray of the lumbar spine which

showed "early degenerative changes." R. 20–21. Notably, the ALJ expressly "found Dr. Ashraf's

[sic] clinical findings and accompanying radiology reports to be valuable as they were issued

based upon a personal examination of the claimant." R. 22.

In addition, although the ALJ discounted, *inter alia*, the physical aspect of Dr. Pecca's

2021 opinion[8]—which is generally consistent with Dr. Boylan's opinion—the ALJ based that

finding, in part, on a mischaracterization of the chiropractor's treatment notes. Specifically, the

ALJ stated that Dr. Pecca's "objective findings from July 2021 through May 2022 showed

cervical syndrome negative." R. 21. However, this physician's treatment notes reflect that

cervical syndrome was, in fact, positive on May 17, 2022. R. 850–51. The ALJ relied on this

mischaracterization when she discounted the physical aspect of the chiropractor's 2021 opinion,

an opinion that is generally consistent with Dr. Boylan's opinion. R. 21, 23; *see also Sutherland*

*v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom

---

[8] Dr. Pecca further opined that the claimant's PTSD, anxiety and depression contributed to his functional loss, that he would be incapable of even low stress work and would be absent more than three times per month. (Ex. 12F). This opinion is unpersuasive. Dr. Pecca's opinion also is more consistent with a sedentary exertional capacity, but Dr. Pecca takes his opinion further by offering limits related to the claimant's mental health impairments. *The physical aspect of Dr. Pecca's opinion is unsupported by his own treating records* and the normal examinations performed during multiple routine clinical encounters with the claimant's primary care provider. (Exs. 8F//9, 12, 16, 22, 25, 24F). Further, Dr. Pecca's opinion regarding claimant's mental-related limits is unpersuasive as Dr. Pecca is not a psychologist, psychiatrist or mental health specialist, he is a treating chiropractor, and his knowledge and expertise are limited to claimant's musculoskeletal problems.

R. 23 (emphasis added).

to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *cf. DeJesus v. Kijakazi*, No. 20-CV-06115-RAL, 2022 WL 1062914, at *10 (E.D. Pa. Apr. 8, 2022) ("By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted."); *Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

In short, the ALJ's failure to explain the consistency factor when considering the persuasiveness of Dr. Boylan's opinion precludes meaningful judicial review; the Court cannot follow the ALJ's reasoning without engaging in conjecture and improperly infringing on the province of the ALJ and re-weighing the evidence.

Furthermore, the Court cannot conclude that the ALJ's error in this regard is harmless. As set forth above, Dr. Boylan's opinion was critical to Plaintiff's claim, particularly when one considers that the doctor opined that Plaintiff suffers greater physical limitations than those contained in the RFC found by the ALJ. R. 16–17, 575–79, 586–90. For example, Dr. Boylan found that Plaintiff could, *inter alia*, occasionally lift and carry up to 10 pounds, sit for a total of less than one hour, could stand for only a total of less than one hour, and could walk for only a total of less than one hour in an eight-hour workday. R. 577, 588. If credited, this opinion would suggest that Plaintiff is limited to less than sedentary work or, if limited to sedentary work, may

18

qualify Plaintiff—who had at least a high school education and whose past relevant work was

unskilled, R. 26—for disability under the Medical-Vocational Guidelines. *See* R. 74 (reflecting

vocational expert testimony that, *inter alia*, a lifting limitation of 10 pounds would reduce a

person to sedentary work); 20 C.F.R. §§ 404.1563(d) (characterizing a person age 50 to 54 years

old as a person "closely approaching advanced age"), 404.1567(a) (explaining that sedentary

work "involves lifting no more than 10 pounds at a time and occasionally lifting OR carrying

articles like docket files, ledgers, and small tools"); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.12;

*Dunn v. Kijakazi*, No. 1:21-CV-91, 2022 WL 17584231, at *12 (M.D. Pa. Dec. 12, 2022)

("Under these Medical Vocational guidelines, if [the claimant]—a person who is closely

approaching advanced age—was found to be able to only undertake sedentary work, the grids

may have mandated a finding that he was disabled.") (citing, inter alia, 20 C.F.R., Part 404,

Subpart P, App. 2, § 201.12); *Cota v. Kijakazi*, No. 4:21-CV-672, 2022 WL 3686593, at *7

(M.D. Pa. Aug. 25, 2022) (finding that ALJ's errors were not harmless where, if the opinion

were accepted and the claimant were limited to sedentary work, he would be found disabled

under grid rule 201.12). At bottom, the ALJ's failure to adequately explain how she considered

the consistency factor in her evaluation of Dr. Boylan's opinion frustrates this Court's ability to

determine whether substantial evidence supports the ALJ's evaluation, the RFC determination,

and, ultimately, the ALJ's disability determination. *See Moldavsky v. Kijakazi*, No. CV 22-1447,

2023 WL 3570927, at *5 (E.D. Pa. May 19, 2023) ("Unclear from the ALJ's summary [of the

medical evidence], though, is how this evidence does not support and is inconsistent with Dr.

Magidenko's opinion. As such, more than a conclusory statement is needed in order to permit

meaningful judicial review and to confirm that substantial evidence supports the ALJ's

opinion."); *Nicholas R. v. Kijakazi*, No. CV 22-04510, 2023 WL 3580837, at *7 (D.N.J. May 19,

2023) (remanding where, *inter alia*, "the ALJ failed to thoroughly discuss the purported inconsistency of Dr. Meza's opinion" and the ALJ's "conclusory and unsupported statements of inconsistency are insufficient for this Court to engage in a meaningful review").

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[9] Moreover, remand is appropriate even if, upon further examination of Dr. Boylan's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

---

[9] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Boylan's opinion and the RFC determination, the Court does not consider those claims. However, the Court notes that it would be helpful on remand if the ALJ clarified her consideration of the supportability of Dr. Pecca's opinion in light of the ALJ's mischaracterization of that physician's May 2022 treatment notes.

VI.    **CONCLUSION**

For these reasons, the Court **REVERSES** the Acting Commissioner's decision and

**REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 7, 2025                              *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE